BENJAMIN B. WAGNER
United States Attorney
KEVIN C. KHASIGIAN
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>APPROXIMATELY $177,022.00 IN U.S.<br>CURRENCY,<br><br>            Defendant. | VERIFIED COMPLAINT FOR<br>FORFEITURE *IN REM* |

The United States of America, by and through its undersigned attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

**NATURE OF ACTION**

1.      This is a civil action *in rem* to forfeit to the United States the Approximately $177,022.00 in U.S Currency ("defendant currency") involved in violations of federal drug laws.

2.      The defendant currency was seized on November 19, 2015, pursuant to a federal seizure warrant after law enforcement officials discovered the bulk cash concealed in a freight parcel shipped from Illinois to California.  The defendant currency is in the custody of the U.S. Marshals Service, Eastern District of California.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over an action commenced by the United States under 28

1

U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 21 U.S.C. § 881.

4.      This district is a proper venue pursuant to 28 U.S.C. § 1355 because the acts giving rise to this *in rem* forfeiture action occurred in this district, and pursuant to 28 U.S.C. § 1395 because the defendant assets were seized in this district.

## **GENERAL ALLEGATIONS**

5.      On October 6, 2015, law enforcement officials from the Tracy Police Department responded to Alfa Transport Company in Sacramento, California to investigate two freight packages that had been identified as connected to criminal activity.  The two packages had a single Bill of Lading.  Each Bill of Lading identified the sender as "Matt Karas" of "Camp Star," 2300 S. Throop Street, Dock #111, Chicago, Illinois.  Law enforcement officials determined that the Throop Street address corresponded to Freightwise Express Inc.

6.      The Bill of Lading identified the recipient of each package as "Larry Mitchell" of "Camp Star," 19678 8th Street, East Sonoma, California.  Law enforcement officials determined that the 8th Street address corresponded to a custom cabinet business named Arend Cabinet and Mill.  The telephone numbers listed for the sender and receiver were the same, and law enforcement officials traced the number to a wireless caller from Chicago, Illinois.

7.      The Bill of Ladings revealed that each shipment was paid through an online company specializing in third party shipping, essentially guaranteeing anonymity to the parties involved in shipping the freight packages, which were each sent from Chicago, Illinois on October 5, 2015.  The freight packages were scheduled to arrive at their ultimate destination in California on October 8, 2015.  The sender of each package paid for shipping with money orders, further establishing their anonymity.

8.      Law enforcement officials subsequently obtained a state search warrant to inspect each of the freight packages sent from Chicago.  The first crate package contained only an empty Autohome brand car top camper box.  Inside the second crate, law enforcement officials observed a similar car top camper – identical to the Autohome brand box found in the first crate.   When the car top camper was removed from the crate, law enforcement officials discovered a Hewlett-Packard computer printer box.  Visible through a hole in the HP printer box were several $100 bills shrink-wrapped in plastic.  Further

1   investigation of the HP printer box revealed numerous large stacks of cash, banded together with rubber

2   bands and shrink-wrapped in plastic.   A later bank count of the cash seized from the freight parcel

3   totaled $177,022.00 – the defendant currency.

4        9.     The defendant currency was denominated as follows: 510 $100 bills; 122 $50 bills;

5   4,752 $20 bills; 1,495 $10 bills; 1,675 $5 bills; and 1,557 $1 bills.

6        10.    After the discovery of the defendant currency inside the HP printer box, the defendant

7   currency was presented to a Tracy Police Department drug dog.  The drug dog positively alerted to the

8   presence of the odor of narcotics on the cash concealed inside the second freight package.

9        11.    Special Agent Rob Marchi of the Drug Enforcement Agency has investigated Camp

10   Star, the entity or business identified on each freight package's Bill of Lading.  According to Special

11   Agent Marchi, Camp Star is not listed on the California Secretary of State's online database for

12   businesses, meaning that the entity is not currently registered in California.  In addition, Camp Star is

13   not listed on the Illinois Secretary of State's online database for businesses, meaning that the entity is

14   also not currently registered in Illinois.  An open source search of "Camp Star" and "California" or

15   "Illinois" produced negative results.

16        12.    Since the October 2015 seizure, law enforcement officials have been unable to locate a

17   "Matt Karas" or "Larry Mitchell" connected to the freight packages or to the "Camp Star" business.

18   Law enforcement officials have called the telephone number identified on the Bill of Lading, but those

19   calls were not answered and law enforcement's voicemails were not returned.

20        13.    In addition, law enforcement officials have determined that the Throop Street address on

21   Parcel # 1 corresponded to a loading dock for Sprague Distribution, and was not affiliated with "Matt

22   Karas" or "Camp Star."  Law enforcement officials also determined that the 8th Street address on

23   Parcel # 2 corresponded to a custom cabinet business named Arend Cabinet and Mill, and was not

24   affiliated with "Matt Karas" or "Camp Star."

25        14.    For the complete details of the investigation see the Affidavit of Robert M. Marchi,

26   Special Agent with the Drug Enforcement Administration, dated November 13, 2015, attached hereto

27   and incorporated herein as Exhibit A.

28

Verified Complaint for Forfeiture *In Rem*

## FIRST CLAIM FOR RELIEF
## 21 U.S.C. § 881(a)(6)

15.     Paragraphs one to fourteen above, in addition to the attached affidavit, are incorporated by reference as though fully set forth herein.

16.     The defendant asset is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended to be used to commit or facilitate a violation of 21 U.S.C. §§ 841 et seq., an offense punishable by more than one year's imprisonment.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

1.     Process issue according to the procedures of this Court in cases of actions in rem;

2.     Any person having an interest in said defendant assets be given notice to file a claim and to answer the complaint;

3.     The Court enter a judgment of forfeiture of the defendant assets to the United States; and

4.     The Court grant such other relief as may be proper.

DATED: 1/5/16                                  BENJAMIN B. WAGNER
                                               United States Attorney


                                    By:     /s/ Kevin C. Khasigian
                                            KEVIN C. KHASIGIAN
                                            Assistant U.S. Attorney

Verified Complaint for Forfeiture *In Rem*

## **VERIFICATION**

I, Robert M. Marchi, hereby verify and declare under penalty of perjury that I am a Special Agent with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: <u>01/05/2016</u>                                        <u>/s/ Robert M. Marchi</u>
                                                                       Robert M. Marchi
                                                                       Special Agent
                                                                       Drug Enforcement Administration

                                                                       (Original signature retained by attorney)

# EXHIBIT A

## AFFIDAVIT OF ROBERT M. MARCHI

## IN SUPPORT OF SEIZURE WARRANTS

## I. INTRODUCTION

I, Robert M. Marchi, Special Agent with the Drug Enforcement Administration (DEA), presently assigned to the Sacramento District Office, being first duly sworn, state:

1.      This affidavit is submitted in support of the Government's application for the issuance of warrant to seize for civil forfeiture the following:

Approximately $177,022.00 in U.S. Currency

2.      This Affidavit is made in support of a warrant to seize the above-defined funds and/or assets pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b).  The items identified above are subject to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6) as they represent proceeds traceable to the sale of controlled substances or funds used or intended to be used to facilitate a federal drug crime in violation of 21 U.S.C. §§ 841(a)(1).  They are further subject to forfeiture under 21 U.S.C. § 881(a)(6) as they represent proceeds of illegal narcotics activities in violation of 21 U.S.C. §§ 841(a)(1) (distribute a controlled substance).

3.      Specifically, the facts set forth below establish probable cause to believe that Matt KARAS and a Larry MITCHELL were involved in the distribution of illegal narcotics and narcotic proceeds in the Eastern District of California and other areas outside of the Eastern District of California. The facts further establish that on October 8, 2015, KARAS sent MITCHELL a package containing bulk cash from Chicago, Illinois to Sacramento, California. A Confidential Source relayed to law enforcement officials that the Karas' package was suspicious and likely contained illicit material.  A California State Search Warrant was subsequently obtained and resulted in the seizure of $177,022.00 in cash.

1

4.      Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit.  To

the extent that any information in this affidavit is not within my personal knowledge, it was

made known to me through my own review of the documents discussed in this affidavit and

through reliable law enforcement sources, including discussions with other law enforcement

agents and task force officers assigned to this case.

## II. BACKGROUND, TRAINING AND EXPERIENCE OF AFFIANT

5.      I am a Special Agent with the United States Drug Enforcement Administration (DEA) and have so

been employed for approximately twenty-four years.  I was trained as a DEA Special Agent at the

DEA/FBI Academy, Quantico, Virginia.   At the Academy, I received special training in the

Controlled Substances Act, Title 21 United States Code, including but not limited to Sections

841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled

Substance Violations.  I received special training regarding criminal organizations engaged in

conspiracies to manufacture and/or possess with intent to distribute methamphetamine, cocaine,

cocaine base, heroin, marijuana and other dangerous drugs prohibited by law.  I received further

training in search and seizure law and many other facets of drug law enforcement.

6.      During the course of my employment as a DEA Special Agent, I have participated in numerous

criminal investigations.  I have participated in numerous Federal and State search warrants

involving controlled substances, the seizure of narcotics related records and other types of

evidence that document the activities of criminal organizations in both the manufacturing and

distribution of controlled substances.  To successfully conduct these investigations, I have utilized

a variety of investigative techniques and resources, including physical and electronic surveillance,

various types of infiltration, including: undercover agents, informants, and cooperating sources.

Through these investigations, my training and experience, and conversations with other

2

experienced agents and law enforcement personnel, I am familiar with the methods used by drug

traffickers to smuggle and safeguard controlled substances, to distribute controlled substances, and

to collect and launder related proceeds.

7.     My knowledge of these tactics, which include the utilization of numerous different cellular

telephones, beepers, counter surveillance, elaborately planned distribution schemes tied to

legitimate businesses, false or fictitious identities, and coded communications and conversations,

has been particularly useful and relevant to this investigation.

8.     Based on my training, I understand the methods and practices used by individuals and

organizations involved in illicit activities to conceal or dispose of income.  These methods include

cash purchases, the purchasing of numerous monetary instruments with cash in amounts of

$10,000 or less, deposits into bank accounts in amounts of $10,000 or less, use of safe deposit

boxes to conceal and temporarily store drug proceeds, and the use of aliases and nominees.  These

and other schemes are commonly referred to as "money laundering".

9.     This affidavit does not contain all facts known to me regarding this investigation, but reflects only

those facts necessary to establish probable cause.  The statements in this affidavit are based upon

my investigation, my training and experience, and the experience of other law enforcement agents

with whom I have consulted.

### III.   THE INVESTIGATION

10.    On October 6, 2015, Detective Brett Hicks of the Tracy Police Department's Special

Investigations Unit received information from a Confidential Source (CS). The CS, according to

Detective Hicks, has been active with the Tracy Police department for approximately one year.

During this time, the CS has, according to Detective Hicks, been truthful and effective in

providing information and intelligence to the benefit of law enforcement.   The CS advised

Detective Brett of a suspicious shipment: Best Freight Solutions, Bill of Lading # 11464319.  Two

crates were associated with the single Bill of Lading. The Bill of Lading identified the

shipper/sender as "Matt KARAS" of Camp Star, 2300 S. Throop St, Dock #111, Chicago IL

60608, telephone ▒▒▒▒▒-1191, and the recipient/receiver as "Larry MITCHELL" of Camp

Star, 19678 8th St, E. Sonoma, CA 95476, telephone ▒▒▒▒-1191 (same number listed for

KARAS).  According to the CS, the shipment was scheduled to arrive in Sacramento on October

8, 2015.

11.     On October 8, 2015, at approximately 4:00 P.M., Detective Hicks applied for and received a

California State Search Warrant from Sacramento County Superior Court Judge Laurel D.White.

Subsequently, Detective Berdosh and Detective Knight from the Tracy Police Department's

Special Investigations Unit responded to Alfa Transport, located at 1172 National Dr.,

Sacramento, CA and located the two crates associated with Bill of Lading #11464319.

Additionally, the Bill of Lading revealed the shipment was arranged through Freightcenter.com,

an online company specializing in third party shipping.

12.     ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒



4

Detective Hicks, Detective Berdosh, and Detective Knight opened the first crate and observed an empty Autohome brand car top camper.  No other items of significance were located in this crate.  The Detectives then searched the second crate and found a similar car top camper.  The Detectives located a "HP" computer printer box inside the camper material.  Visible through a hole in the printer box, the Detectives observed a $100 bill in a vacuum-sealed bag.  Detective Hicks opened the printer box and observed a large amount of cash within the vacuum-sealed bags.  The cash was bound in rubber bands and stacked.



13.     A later count of the cash totaled $177,022.00.  The currency was denominated as follows: 510 $100 bills; 122 $50 bills; 4,752 $20 bills; 1,495 $10 bills; 1,675 $5 bills; and 1,557 $1 old bills.

14.     Upon arrival at the Tracy Police Department Annex, Detective Berdosh removed the cash from the box and concealed it out of the sight or knowledge of Detective Hicks or his K-9 partner "Boss".  Detective Hicks and his K-9 partner "Boss" then conducted a check of the area where Detective Berdosh had hidden the cash.  Detective Hicks upon completion of his investigation reported to Detective Berdosh that "Boss" had given a positive alert for the odor of narcotics associated with a duffle bag.  Detective Berdosh then informed Detective Hicks he had used the duffle bag to conceal the cash associated with the Bill of Lading identified as #11646319.

15.     On October 8, 2015, Detective Hicks removed the currency from the duffle bag and observed the rubber band bound cash was contained in three separate vacuum sealed bags.  The largest bag was labeled "77" and the two smaller bags were each labeled "50 E".  In conclusion, it is common for individuals involved in the sale of illegal narcotics to attempt to avoid law enforcement detection and scrutiny.  This includes the use of false or incomplete names, addresses, telephone numbers, as well as attempts to conceal cash through false labeling and concealment, and attempts to mask the odor from law enforcement K-9 detection.

16.     Detective Hicks later reported conducting an internet search for information associated with "Camp Star", the business name associated with the shipment.  According to Detective Hicks, the only information he located was associated with a Jewish Council for Youth Services program for children diagnosed with ADHD and related disorders in the Chicago area.  Additionally, Detective Hicks reported he was unable to locate any organization associated with "Camp Star" in California.  Detective Hicks also conducted a corporation search for "Camp Star" and Matt KARAS and Larry MITCHELL.  The results of his search were negative for any matches.

6

17.    A CLEAR law enforcement database search for the addresses listed on the BOL were negative for any association with Camp Star, Matt KARAS, or Larry MITCHELL.

18.    The shipping address, 2300 S. Throop St, Dock #111, Chicago, IL 60608, is an industrial loading dock that Sprague Distribution began leasing on September 1, 2015.  The receiving address, 19678 8th St, E. Sonoma, CA 95476, comes back to Arend Cabinet and Mill, a cabinet making business.  None of the businesses appear to be affiliated with persons identified in the BOL.

19.    A CLEAR search for Matt KARAS identified as Mathew J. KARAS of ▓▓▓▓▓▓▓▓ Chicago, IL 60633, DOB: ▓▓▓▓1977, with a telephone number of ▓▓▓▓-4098.  A CLEAR search for Larry MITCHELL in the Sonoma, CA area was negative.  Detective Hicks was unable to establish any association linking these names to each other or the shipment.

20.    A search in CLEAR for the telephone number listed on the BOL, ▓▓▓▓1191, came back as Wireless Caller out of Chicago, IL.  On October 9, 2015, Detective Hicks called the number, and the call went directly to voice mail.  He called the number again on October 13, 2015, and it went unanswered.  On  October 23, 2015, Detective Hicks called telephone number ▓▓▓▓-4098, which was previously located in CLEAR for Mathew KARAS, and received no answer.  Detective Hicks left a voice message requesting KARAS return his call.  It is unknown if the telephone number identified in CLEAR is the same Mathew KARAS associated with the shipment.

21.    On October 9, 2015, Detective Hicks was contacted by Freightcenter.com, the third party company who brokered the shipment.  Freightcenter.com had been notified by Best Freight Solutions, Inc. that the shipment had been seized.  According to Freightcenter.com, the shipment was suspicious because the sender used a money order to pay for the shipment.  A money order is used to provide the sender additional anonymity and avoid providing a true name, address, credit card, business information; similar to paying with cash.

7

22.     Based on my training and experience, it is common for individuals who accumulate large
quantities of cash from the sale of illegal narcotics to utilize freight carriers as a means to avoid
law enforcement scrutiny.  This is particularly true for those individuals distributing
marijuanaacross state lines, which generates large quantities of cash from large population areas
such as Chicago, Illinois. I believe that the funds located in the Best Freight Solutions, Inc.
shipping crate bearing a Bill of Lading identified as #11464319 were drug proceeds from the sale
of illegal narcotics.  Based on my training and experience involved in intrastate and interstate
transportation of drugs, it is common for drug traffickers to have a central point to stage drugs and
proceeds of drugs.  Furthermore, based on my training and experience, it is common for drug
traffickers involved in distributing marijuana to purchase or cultivate marijuana in areas such as
Northern California where marijuana is grown in abundance and shipped to states to the east
where marijuana can be sold at a higher price because the marijuana is not as readily available in
those states and the narcotic proceeds then shipped back to California. Based upon my training
and experience, individuals involved in illegal narcotics distribution commonly utilize false or
incomplete addresses in order to conceal their identity.  It is also common for such individuals to
ignore attempts by law enforcement to contact them by telephone.  These same individuals will,
once law enforcement attempts to identify or contact them, change their contact information in a
final attempt to avoid detection.

## IV.  CONCLUSION

23.     Based upon the events and evidence outlined in this Affidavit, my training and experience, and the
training and experience of the agents that I have consulted with in preparing this Affidavit, there is
probable cause to believe that the funds located in Best Freight Solutions, Inc. shipping crate
bearing a Bill of Lading identified as #11464319 were drug proceeds from the sale of illegal

narcotics and "Matt KARAS and Larry MITCHELL" intentionally used fictitious names, addresses and business identities to conceal their true identity from law enforcement scrutiny.

24.    I request the issuance of a seizure warrant against the following property as proceeds from the distribution and sale of narcotics:

    a.      Approximately $177,022.00 in U.S. Currency.

                                Robert M. Marchi
                                Special Agent
                                Drug Enforcement Administration

Reviewed and approved as to form:

Kevin C. Khasigian
Assistant United States Attorney

Subscribed and sworn to before me

this   11-13   day of November, 2015.

Edmund F. Brennan, United States Magistrate Judge

9